

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARIO MCKINLEY                                    CIVIL ACTION

VERSUS                                           NO. 00-200

ED BYERLY ET AL.                                 SECTION "L" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Mario McKinley, is a frequent litigant in this Court and a convicted prisoner currently incarcerated in the Hunt Correctional Center ("Hunt") in St. Gabriel, Louisiana. He filed this complaint pro se and in forma pauperis[1] pursuant to 42 U.S.C. § 1983 against Terrebonne Parish Criminal Justice Complex ("TPCJC") Medical

---

[1] Although he is a frequent litigant, at the time he filed the instant complaint McKinley was eligible to proceed in forma pauperis because at that time he had not had three of his various lawsuits dismissed as frivolous and/or for failure to state a claim. 28 U.S.C. § 1915(g); Carson v. Johnson, 112 F.3d 818 (5th Cir. 1997). Since that time, however, three of McKinley's cases have been dismissed as frivolous and those dismissals have become final and are now eligible to be counted as frivolous dismissals for purposes of Section 1915(g) because the appeal periods have lapsed and/or the appeals have been dismissed. These cases include: McKinley v. Unidentified Parties C.A. No. 00-729 "K"(2) (E.D.La.); McKinley v. Null, C.A. No. 00-280 "K"(3) (E.D.La.); and McKinley v. Collins, C.A. No. 99-1191 "S"(2) (E.D.La.). In addition, at least one of his many cases in this Court had been dismissed as frivolous for Section 1915(g) purposes before the instant suit was filed, McKinley v. Indigent Defender's Office, C.A. No. 99-3066 "S"(2) (E.D.La.). Therefore, McKinley is no longer eligible to file in forma pauperis proceedings in any federal district court or court of appeals hereafter.

DATE OF MAILING **JUN 3 0 2000**

DATE OF ENTRY
**JUN 3 0 2000**



Administrator Ed Byerly and Head Nurse Kelly alleging that while incarcerated in TPCJC, he was subjected to constitutionally inadequate conditions and threatened by other inmates when he was improperly transferred from a medical cell to other areas of the prison. Plaintiff also alleges that he was denied adequate medical care.  Plaintiff seeks injunctive relief and monetary compensation in the amount of $150,000.00.  Record Doc. No. 1, Complaint at ¶ V and p. 2 of plaintiff's letter to the Clerk attached to Complaint.

On March 30, 2000, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Barry R. Laiche, counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

During the conference, plaintiff testified that his probation was revoked on March 11, 1999 and he is currently serving a two-year sentence for felony theft.  Plaintiff confirmed that he asserts the following four claims in this case, all relating to incidents which occurred during the time he was incarcerated in TPCJC from February 18 until June 8, 1999:  (1) He was improperly transferred from a medical cell to other areas of the prison.  (2) He was subjected to inadequate conditions of confinement.  (3) He was threatened by other inmates.  (4) He was denied adequate medical care.

McKinley testified that he is "suffering with nerve damage and torn ligaments" because officers "tried to break [his] arm" during an arrest on February 18, 1999. He stated that the injuries he received are the subject of one of his many other lawsuits in this Court and do not pertain to the instant suit. Plaintiff stated that after his arrest on February 18, 1999, he was taken to a hospital, and then transported to TPCJC. He testified that at TPCJC he was placed in a totally segregated one-man medical cell where he stayed for 25 days "due to the fact that I had a metal brace on my arm with only use of one arm." Plaintiff confirmed that his claims in this case concern his allegation that sometime in late March 1999, after his probation was revoked, defendants transferred him from the medical cell to the "Bravo 100" medical facility, although he "objected strongly not to be placed in general population" because he feared "threat of bodily harm with only use of one arm."

Plaintiff stated that in the Bravo 100 facility, he was assigned to the top bunk in a two-man cell with another inmate who was using the bottom bunk. Plaintiff testified that because he needed "both arms to get up in the top bunk" and was unable to climb up to the top bunk because his right arm was in a metal brace, he had to "sleep on the floor in water running from toilets." Plaintiff stated that his cellmate appeared to have a mental problem rather than a physical problem, yet refused to give him the bottom bunk. Plaintiff further stated that although he "complained and complained," he was unable to secure a bottom

3

bunk and slept on the floor in Bravo 100 with water leaking from the toilet for about three weeks. Plaintiff said he was "subjected to cruel and unusual punishment my whole while (sic) in [Bravo] due to having to sleep on the floor in water running from toilets . . . and it was medical's responsibility to see that I had a bottom bunk because I was unable to get up in the top bunk."

After three weeks in Bravo 100, plaintiff testified that he was also "subjected to cruel and unusual punishment" when he was transferred to the "Delta 500" facility and again assigned to a top bunk. He stated that he had to sleep on the floor in this facility for six weeks with "more water dripping from under a drain" because he "couldn't get up in the top bunk." Plaintiff testified that a deputy, whom he identified as "Deputy Prestback," came into Delta 500 and asked plaintiff's cellmate, Douglas Chillman,[2] to move his stuff and "give me [the] bottom bunk because medical, two months later you might as well say, were [still] trying to get me a bottom bunk." Plaintiff testified, however, that after Deputy Prestback left, Chillman refused to give him the bottom bunk. Plaintiff stated that he could not fight his cellmate for the bottom bunk, so he complained to deputies in "the pod," who said only that they would report it. Plaintiff complained that although other bunks were available, they were all top bunks. Plaintiff testified that the water on the floor in the cell

---

[2] In his original complaint, plaintiff identified his cellmate in Delta 500 as Douglas "Trahand," rather than Douglas "Chillman" as he testified during the conference on March 30, 2000. Record Doc. No. 1 at p. 2 of plaintiff's letter to the Clerk dated December 4, 1999, attached to Complaint.

was "leaking from one of the toilets through the shower valve. . . ." and that "they came in and done (sic) some work on it to stop it from leaking."

Plaintiff also testified that while in Delta 500, which plaintiff described as "a section of the jail known for dangerously aggressive inmates," he was threatened on two occasions by other inmates. On the first occasion, plaintiff testified that he and inmate Eddie Hawken "had a few words" and Hawken was "attempting to put bodily harm on me." Plaintiff stated that if it had not been for Hawken's cellmate, an inmate named Cleveland Green, he "would have been real messed up" because "this dude [Hawken] is a professional boxer." Plaintiff stated that Hawken did not hit him, but was "attempting to hit me" when Green talked Hawken out of it.

Plaintiff testified that on the second occasion he and another inmate, Robert Lagard, "had a few words about the television" and Lagard threatened "to stomp me in my face." Plaintiff stated that as Lagard began to approach him, "again Green was there and [Green] backed [Lagard] away from me." Plaintiff further stated that he "complained to medical" and to jail officials to move him out of Delta 500 and "they totally ignored all requests." Plaintiff testified that he experienced no other threats while housed in Delta 500. He stated that he remained in Delta 500 for about six weeks from early April until he was transferred to Hunt on June 8, 1999.

5

McKinley confirmed that his claim against defendants Byerly and Kelly is that they should have kept him in the segregated medical unit where he was originally housed because he had use of only one arm. Plaintiff testified that he believes he was subjected to poor treatment by TPCJC authorities because he has filed so many lawsuits against them.

As to his claim of inadequate medical care, McKinley testified that he has been "suffering from nerve damage and torn ligaments" for five months and had complained about pain and denial of medication from the day he was moved out of the medical cell. Plaintiff stated that he "constantly wrote grievance forms for over three months to medical and to jail officials and no one responded until really . . . about April or May [1999]," about two or three months after his arrest. Plaintiff stated that he received medical attention in early May 1999, when he was taken back to the Leonard J. Chabert Medical Center in Houma, where he was given x-rays in the emergency room and was told by medical personnel that he has torn ligaments, nerve damage and tendinitis. McKinley testified that he was given pain medication at that time and Ibuprofen, which he took while he was at the hospital and received afterwards at the prison "maybe once a week" or "every two weeks." Plaintiff further testified that while at the hospital, an appointment was made for him with an orthopedic doctor. Plaintiff stated, however, that he was never

seen by the orthopedic doctor because he was transferred to Hunt about one week after he returned from the hospital.

The verified medical records submitted by counsel for defendants in response to my order, Record Doc. Nos. 3 and 14, corroborate McKinley's testimony concerning an injury to his arm at the time of his arrest, his subsequent requests for medical attention, and his provision with substantial medical attention for this problem.  The records also confirm that plaintiff received x-rays, was diagnosed with tendinitis and treated in May 1999 with Ibuprofen. The medical records further substantiate McKinley's testimony that an appointment was scheduled for him with the orthopedic clinic at Chabert Medical Center in Houma but that plaintiff was transferred to Hunt before the date of his appointment.

## ANALYSIS

### I.    STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on

an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The Court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court

8

should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing."  Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."  Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'"  Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not."  Moore, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint must be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a claim under the broadest reading.[3]

II.   <u>CONDITIONS OF CONFINEMENT</u>

Plaintiff complains that he was improperly transferred from a totally segregated one-man medical cell into a cell with another inmate where he was given a top bunk bed but nevertheless had to sleep on a wet floor. Plaintiff's testimony establishes that he was a convicted prisoner at all relevant times. He testified that the conditions about which he complaints are those he experienced <u>after</u> he was transferred in late March 1999 from the segregated medical cell in which he was originally housed to the Bravo 100 and later the Delta 500 facilities at TPCJC. The transfer occurred after his probation was revoked on March 11, 1999. Claims by inmates who are incarcerated based upon revocation of probation must be analyzed under the legal standards applicable to convicted prisoners. <u>Guidry v. Jefferson County Detention Center</u>, 868 F.Supp 189, 189-90 n.1 (E.D. Tx. 1994); <u>Crawford v. Foti</u>, 1993 WL 515760 at *4 (E.D. La. 1993) (Wynne, M.J.) (citing

---

[3] Pro se civil rights complaints must be broadly construed, <u>Moore</u>, 30 F.3d at 620, and I have broadly construed the complaint in this case.

Rankin v. Klevenhagen, 5 F.3d 103 (5th Cir. 1993)).  Thus, the Eighth Amendment standard applies to the claims McKinley makes in this case.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on convicted prisoners.  "Prison conditions constitute cruel and unusual punishment if they involve the 'wanton and unnecessary infliction of pain [or if they are] grossly disproportionate to the severity of the crime warranting imprisonment.'"  Hamilton v. Lyons, 74 F.3d 99, 103-04 (5th Cir. 1996) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981); citing Estelle v. Gamble, 429 U.S. 97, 103 (1976); Hutto v. Finney, 437 U.S. 678, 687 (1978)).

"Like other Eighth Amendment claims, a conditions-of-confinement claim must satisfy tests for both objective and subjective components."  Davis v. Scott, 157 F.3d 1003, 1006 (5th Cir. 1998) (citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)); accord Wilson v. Seiter, 501 U.S. 294, 298-99 (1991); Downey v. Denton County, 119 F.3d 381, 385-86 (5th Cir. 1997).  To succeed on a claim of unconstitutional conditions of confinement, this Court must ask if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a Constitutional violation."  Hudson, 503 U.S. at 8 (quoting Wilson, 501 U.S. at 298, 303). If the Court finds that either the subjective or objective component of the test is not met, it need not address the other component. Davis, 157 F.3d at 1006.

11

With respect to the objective component, the Supreme Court in <u>Wilson</u> noted that routine discomfort is part of the penalty that convicted prisoners pay for having committed crimes. Therefore, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." <u>Wilson</u>, 501 U.S. at 298 (quoting <u>Rhodes</u>, 452 at 347). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." <u>Hudson</u>, 503 U.S. at 9.

With respect to the subjective component of the test, the Supreme Court has applied a deliberate indifference standard. <u>Wilson</u>, 501 U.S. at 303. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994).

> To establish deliberate indifference in the context of the Eighth Amendment, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.

<u>Bradley v. Puckett</u>, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing <u>Farmer</u>, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk." <u>Id.</u> (citing <u>Farmer</u>, 511 U.S. at 842 & n.8).

12

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard v. Texas Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (citing <u>Board of County Comm'rs v. Brown</u>, 117 S. Ct. 1382, 1391 (1997)) (other citations omitted) (emphasis added).   "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference."  <u>Norton</u>, 122 F.3d at 291 (citing <u>Farmer</u>, 511 U.S. at 838-40).

In this case, plaintiff has failed to allege facts sufficient to establish either component of the test.  None of plaintiff's complaints about the conditions at TPCJC rise to the level of a constitutional violation, as outlined below.  However, even if they did, plaintiff has alleged no facts which show that the defendants or any other party acted with "deliberate indifference" either in creating these conditions or failing to respond to them. Plaintiff has not alleged a "serious risk of harm" and has not alleged facts sufficient to show that defendants actually drew an inference that an excessive risk of harm to plaintiff existed because of any conditions at TPCJC.

a.   <u>Transfer to Another Prison Unit</u>

Plaintiff complains that he should not have been transferred from a medical cell to other areas of the prison while he "had a metal brace on [his] arm with only use of one

13

arm." However, like a transfer from one prison to another, plaintiff has no constitutional right to a particular status or classification within the prison. The classification of inmates is an administrative function of the prison. Jones v. Diamond, 636 F.2d 1364, 1376 (5th Cir. 1981) (en banc).[4] Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation. Bell v. Wolfish, 441 U.S. 520, 547-48 (1979); Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990), cert. denied, 499 U.S. 910 (1991). "Inmates have a federal right to due process at prison classification . . . only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates." Ricker v. Leapley, 25 F.3d 1406, 1409 (8th Cir. 1994); accord Canterino v. Wilson, 869 F.2d 948, 953 (6th Cir. 1989) (citing Hewitt v. Helms, 459 U.S. 460, 472 (1983)). "Classification of inmates in Louisiana is a duty of the Louisiana Department of Corrections and an inmate has no right to a particular classification under state law." Woods v. Edwards, 51 F.3d 577, 581-82 (5th Cir. 1995) (citing Wilkerson v. Maggio, 703 F.2d 909, 911 (5th Cir. 1983)).

Thus, as the United States Court of Appeals for the Fifth Circuit recently stated in Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998): "Inmates have no protectable

---

[4] Cert. dismissed, 453 U.S. 950 (1981), overruled on other grounds, International Woodworkers of Am. v. Champion Int'l Corp., 790 F.2d 1174 (5th Cir. 1986), aff'd submissions nom., Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437 (1987).

14

property or liberty interest in custodial classification.  Wilson v. Budney, 976 F.2d 957, 958 (5th Cir. 1992); Moody v. Baker, 857 F.2d 256, 257-58 (5th Cir. 1988). The classification of prisoners is a matter within the discretion of prison officials. McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990).  Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials. See Jackson v. Cain, 864 F.2d 1235 (5th Cir. 1989)."

Plaintiff's transfer from the medical cell was not an abuse of the discretion the law assigns to prison officials and with which this Court should not interfere.  No violation of McKinley's constitutional rights occurred under the circumstances described in his testimony.

b.    Bunk Beds as Conditions of Confinement

Plaintiff also complains that he was not provided with a lower bunk and instead was provided a top bunk.  Deprivation of bedding is not per se unconstitutional.  Robinson v. Illinois State Correctional Cen., 890 F. Supp. 715, 720 (N.D. Ill. 1995); Rodgers v. Thomas, 879 F.2d 380, 384 (8th Cir. 1989); McMurry v. Phelps, 533 F. Supp. 742, 768 (W.D. La. 1982), overruled on other grounds by Thorne v. Jones, 765 F.2d 1270, 1272 (5th Cir. 1985).  Provision of bedding falls within those matters committed to prison administrators' sound discretion.  Kot v. Matty, No. 90-7644, 1991 WL 246906, at *2 (E.D. Pa. November. 15, 1991), aff'd, 980 F.2d 723 (3d Cir. 1992).

McKinley stated that he was given a top bunk and that all the lower bunks were occupied. In this case, McKinley has alleged nothing more than a discomfort that is not sufficient to state a claim of constitutional dimension. Holloway v. Gunnell, 685 F.2d 150, 155 (5th Cir. 1982). A temporary shortage of facilities such as top bunks, blankets, mattresses and toiletries, although admittedly unpleasant, does not rise to the level of a constitutional violation. See Gilland v. Owens, 718 F. Supp. 665, 685 (W.D. Tenn. 1989) (short term deprivations of toilet paper, towels, sheets, blankets, mattresses, toothpaste, toothbrushes and the like to inmates detained in a holding area prior to placement in the general population do not rise to the level of a constitutional violation); Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992), cert. denied, 113 S. Ct. 1415 (1993); Robinson, 890 F. Supp. at 720.

In short, assignment to an upper bunk bed did not constitute a constitutional violation under the circumstances described in McKinley's pleadings and testimony. Plaintiff's complaint about the unavailability of a bottom bunk bed at TPCJC must be dismissed as legally frivolous and for failure to state a claim cognizable under Section 1983.

c.    Leaking Toilet

Plaintiff's claim that he had to sleep on the floor in water from leaky plumbing fails to state a claim of constitutional violation. Although the conditions he described are

obviously unpleasant, plaintiff has failed to allege either deprivations so extreme that they violate the Eighth Amendment or sufficiently serious harm resulting from these problems to meet the requirements of Farmer, and this claim does not rise to the level of constitutional violation.

A minor sanitation restriction or problem, although admittedly unpleasant, does not amount to cruel and unusual punishment. Whitnack, 16 F.3d at 958; Knop, 977 F.2d at 1013; Robinson, 890 F. Supp. at 720.  "[J]ails must provide only reasonably adequate hygiene and sanitation conditions. Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986).  Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." Holloway, 685 F.2d at 156.  Courts have repeatedly held that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions. Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998).  Living temporarily with conditions such as those described by McKinley may be an inconvenience, but he has not alleged sufficiently serious harm resulting from these problems to satisfy the objective component required to state a claim for unconstitutional conditions of confinement, particularly when he was provided with a useable bunk in which to sleep.

* * *

None of the conditions about which McKinley complains springing from his transfer from the segregated medical cell to other facilities in TPCJC deprived him of the minimal civilized measure of life's necessities. He was provided with an upper bunk. His testimony establishes that while he experienced discomfort and threats, he suffered no actual harm as a result of the transfer. Thus, he fails to establish the objective component of the Eighth Amendment test. In addition, his testimony demonstrates that he cannot establish the subjective, deliberate indifference standard of fault required by the Eighth Amendment test. He testified that no lower bunks were available, that a jail official made an attempt to accommodate his request for a lower bunk, and that jail personnel did repair work on the alleged plumbing leaks. He suffered no substantial, actual harm as a result of these conditions, so that defendants could not have actually drawn an inference that potential for substantial harm existed. McKinley fails to state an Eight Amendment claim.

III.   INADEQUATE MEDICAL CARE

As an inmate whose probation had been revoked, McKinley was a convicted prisoner at all relevant times about which he complains. In Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials

18

or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976). As noted above, "deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. The Farmer definition applies to Eighth Amendment medical claims. Reeves, 27 F.3d at 176. The Fifth Circuit has reiterated in Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), that the deliberate indifference standard applies to convicted prisoners like McKinley.

Further, the plaintiff must establish that the defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

As noted above, "[t]he Supreme Court has recently reaffirmed that 'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Southard, 114 F.3d at 551

19

(citations omitted) (emphasis added). "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291.

In this case, plaintiff's allegations negate any inference that defendants acted with deliberate indifference to plaintiff's medical needs. Even assuming that plaintiff's medical conditions, nerve damage and torn ligaments, were serious, see Oldham v. Chandlor-Halford, 877 F. Supp. 1340, 1355 (N.D. Iowa 1995) (fractured wrist is a serious medical need), he has alleged facts, confirmed by the medical records, that negate any inference of deliberate indifference by jail officials. Plaintiff's complaint, as amended by his testimony and confirmed by the medical records, shows that he received appropriate medical care while incarcerated in TPCJC. Immediately after plaintiff's injuries occurred, he was taken to a hospital, then placed in a medical cell at the prison where he stayed for 25 days. Later, in response to his complaints, he was taken again to the hospital where he was given x-rays, prescribed pain medication and an appointment was made for him for examination at an orthopedic clinic. Although plaintiff has alleged delay in medical care between the time he first requested treatment and the time it was provided, and he has expressed dissatisfaction with the speed, nature and effectiveness of his treatment, including the administrative medical decision to transfer him from the special medical unit to other prison facilities while he was still wearing a splint on his arm, none of his

20

allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

First, mere delay in receiving care is not in and of itself a constitutional violation. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990); Simons v. Clemens, 752 F.2d 1053, 1056 (5th Cir. 1985). Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson v. Seiter, 111 S.Ct. 2321, 2323 (1991). The delay about which plaintiff complains did not cause "a life-long handicap or permanent loss" sufficient to constitute a serious medical need for constitutional purposes. See Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); Wesson, 910 F.2d at 283-84 (minor delay in escorting injured prisoner to prison infirmary for treatment of swollen wrists with some bleeding cannot be construed as deliberate indifference to serious medical needs). No such permanent loss resulting from delay has been alleged in this case.

Second, while it is clear from plaintiff's allegations and testimony that he is not satisfied with the speed, nature or effectiveness of his medical care, it is equally clear that the medical care provided was reasonable, prompt and constitutionally adequate.

21

Certainly, no finding of deliberate indifference to his medical needs can be made based on this record. Plaintiff was examined and received hospital treatment, x-rays and medication in response to his complaints. Contentions like McKinley's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citing Mendoza, 989 F.2d at 193) (active treatment of prisoner's serious medical condition that ultimately resulted in death does not constitute the requisite deliberate indifference, even if the treatment was negligently administered); see Norton, 122 F.3d at 291-92; Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference). Therefore, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

At best, plaintiff's allegations in this complaint amount to claims of negligence because plaintiff claims that he was treated too slowly and should have received different kinds and amounts of treatment in special medical facilities, as opposed to what he actually

22

received.  However, claims arising out of merely negligent acts do not give rise to relief under Section 1983.  The Supreme Court has held that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty or property."  Daniels v. Williams, 474 U.S. 327, 328 (1986); Davidson v. Cannon, 474 U.S. 344, 347 (1986).  In addition, as noted above, mere disagreement or dissatisfaction with the type or extent of medical  treatment provided cannot support a Section 1983 claim.  Varnado, 920 F.2d at 321; Mendoza 989 F.2d at 193.  Therefore, to the extent plaintiff is actually alleging that his medical condition was negligently or improperly handled by prison officials, he advances a legally frivolous argument and fails to state a claim for relief under Section 1983.

IV.    THREATS BY OTHER INMATES

Viewed broadly, plaintiff's allegations may also conceivably state a claim for failure of prison officials to protect him from inmates Hawken and Lagard whom plaintiff asserted threatened to harm him while he was housed in the Delta 500 facility, an area according to plaintiff, "known for dangerously aggressive inmates."

Under the Eighth Amendment, prison officials have a duty to protect inmates from harm and take reasonable measures to protect their safety.  Farmer, 511 U.S. 825, 832-33; Hare, 74 F.3d at 650.  As discussed above in connection with plaintiff's claims regarding the alleged inadequate medical care, the Eighth Amendment standard enunciated in Farmer

23

applies. Again, this Court must determine if the alleged deprivation was "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and if defendants were deliberately indifferent to inmate health or safety, Farmer, 511 U.S. at 834; Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998), all as those terms are more fully defined above.

A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; accord Newton, 133 F.3d at 308. Again, "'[s]ubjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291 (citing Farmer, 511 U.S. at 838-40). If the Court finds that one of the components of the test is not met, it need not address the other component. See Helling v. McKinney, 509 U.S. 25, 35 (1993) (if prisoner fails to prove first element, court may enter judgment without taking further evidence).

Plaintiff's complaint meets neither prong of Farmer. Accepting as true for present purposes the facts about which he testified, there is no allegation that defendants were aware of facts from which they could infer that a substantial risk of serious harm existed, and then were deliberately indifferent to that risk. Plaintiff has provided no facts

24

supporting any inference of defendants' knowledge of an "excessive risk" of harm. Although plaintiff testified that the area where he was housed was "known for dangerously aggressive inmates," plaintiff does not allege that he alerted prison authorities to the threats he received or that he actually suffered any injuries during his conflicts with inmates Hawken and Lagard.  On the contrary, plaintiff testified that although both Hawken and Lagard threatened to harm him physically, the disputes were in actuality limited to an exchange of words, because both situations were quickly diffused by another inmate, and McKinley was not in fact harmed or physically injured in any way as a result of his confrontations with these other inmates.  Cf. Farmer, 511 U.S. at 848 (deliberate indifference standard met by allegations that prison officials knew that plaintiff was young, feminine-appearing, nonviolent transsexual, highly likely to experience sexual pressure and significant safety risks in general population at high-security prison); Johnston v. Lucas, 786 F.2d 1254, 1258 (5th Cir. 1986) (prison officials knew that inmate had repeatedly threatened plaintiff).

In the absence of any knowledge by defendants that the two inmates who threatened plaintiff posed a substantial risk of serious harm to plaintiff, and since plaintiff was not harmed by the other inmates, any conceivable claim that they failed to protect him from harm must be dismissed.  To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual injury caused by the defendant's acts.  See Jackson v. Culbertson, 984 F.2d

699, 700 (5th Cir. 1993) (excessive force claim dismissed as frivolous when prisoner suffered no injury); Oliver v. Collins, 904 F.2d 278, 281 (5th Cir. 1990) (claims properly dismissed when plaintiff alleged insufficient causal connection between defendants' conduct and the claimed assault, and when plaintiff did not allege constitutional harm); Auster Oil & Gas, Inc. v. Stream, 835 F.2d 597, 602 (5th Cir. 1988)(§ 1983 is designed to compensate persons for actual injuries caused by the deprivation of constitutional rights."); Jefferson v. City of Hazelhurst, 936 F. Supp. 382, 386 (S.D. Miss. 1995) ("To state a cause of action under Title 42 U.S.C. § 1983, the plaintiff must plead . . . seven elements, [including] . . . that there exists a direct causal connection, . . . without intervening factors, between the deprivation and some injury to plaintiff.") Since McKinley suffered no actual injury as a result of the alleged threats, he fails to state a cognizable Section 1983 claim. See also 42 U.S.C. § 1997e ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury while in custody without a prior showing of physical injury.").

V.    AMENDMENTS ARE FUTILE

McKinley has filed a motion to amend his complaint.  Record Doc. No. 12. Because the facts on which plaintiff bases his claims establish that any claims he might assert under Section 1983 are legally frivolous and fail to state a cognizable claim that his constitutional rights have been violated in any way, it would be futile to permit plaintiff

to amend his complaint.   <u>Wimm v. Jack Eckerd Corp.</u>, 3 F.3d 137, 139 (5th Cir. 1993).

Accordingly, his motion to amend is DENIED.

### RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint

be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a

claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and

recommendations in a magistrate judge's report and recommendation within ten (10) days

after being served with a copy shall bar that party, except upon grounds of plain error,

from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object.   <u>Douglass v. United Servs. Auto Ass'n</u>,

79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___29th___ day of June, 2000.



_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE